UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MARK BROOKS,                              )
                                         )
            Petitioner,                   )
                                         )
      v.                                 )          Case No. 4:14CV00061 AGF
                                         )
TERRY RUSSELL,                            )
                                         )
            Respondent.                   )

## MEMORANDUM AND ORDER

This matter is before the Court on the pro se petition of Missouri state prisoner

Mark Brooks for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  On November

18, 2009, Petitioner was convicted by a jury of the forcible rape of R.R., occurring on

November 12, 2001, and the attempted forcible sodomy of L.H., occurring on December

2, 2001.  Petitioner was sentenced on January 13, 2010, to 15 years and five years,

respectively, with the sentences to be served consecutively.  His convictions and

sentences were affirmed on direct appeal.  Petitioner's motion for state post-conviction

relief was denied following an evidentiary hearing, and this denial was affirmed on

appeal.

For federal habeas relief, Petitioner claims that his constitutional rights were

violated by: (1) defense counsel's failure to move for dismissal as a result of the state's

violation of Petitioner's right to a speedy trial; (2) defense counsel's failure to move for

dismissal due to the state's destruction of "materially exculpatory" evidence; and (3) the

trial court's failure to sever the charges arising out of the crimes against the two victims. For the reasons set forth below, habeas relief shall be denied.

## BACKGROUND

### Pre-Trial Events

On April 19, 2002, the State filed a felony complaint against Petitioner for the crimes of conviction, and an arrest warrant was issued that same day. On April 22, 2002, Petitioner was arrested in Illinois on unrelated charges. In December 2004, the evidence custodian destroyed the physical evidence (clothing worn at the time of the rape and a sexual assault kit) related to the rape of R.R. On October 23, 2006, while still in custody in Illinois, Petitioner moved for a speedy trial in the Missouri case. Petitioner remained in custody in Illinois until the Illinois charges were resolved in January 2007. On January 24, 2007, Petitioner was returned to and incarcerated in Missouri.

On March 23, 2007, a six-count information was filed against Petitioner, with four counts related to the crimes against R.R., on November 12, 2001, and two counts related to the crimes against L.H. on December 2, 2001. Petitioner's arraignment was initially scheduled for June 2007, but on Petitioner's motion, it was continued to July 24, 2007, at which time trial was set for December 3, 2007.

 On July 6, 2007, Petitioner moved to sever the counts related to R.R. from the counts related to L.H. He argued that the two sets of counts were not alleged to have occurred as part of the same transaction or scheme. The motion to sever was denied.

On November 14, 2007, Petitioner entered a plea of not guilty by reason of mental disease or defect, and the trial was continued to allow for a psychological evaluation of

Petitioner. A final psychological evaluation was filed with the court on October 27, 2009, concluding that, at the time of the offenses, Petitioner was not incapable of knowing or appreciating the nature, quality, and wrongfulness of his conduct. Petitioner's case went to trial on November 16, 2009.

**Trial**

The evidence adduced at trial established the following. In November 2001, R.R. was driving to a video rental store when she saw Brooks driving a truck on a road near the store. As R.R. testified, Brooks turned around the truck and drove it into the store's parking lot. Brooks exited the truck and approached R.R. asking if she had a cell phone. R.R. replied that she did not, and pointed Brooks to a pay phone he could use. Brooks initially walked toward the pay phone, but turned around and entered R.R.'s car and forced her into the passenger seat. Brooks turned the car on and drove out of the parking lot, and eventually stopped in a wooded area.

After parking the car, Brooks exited the car and made R.R. perform oral sex on him. Brooks then removed R.R.'s clothing and performed oral sex on her. Brooks also engaged in sexual intercourse with R.R. R.R. asked Brooks why he did this, and Brooks replied that this was how he could get a woman. Acting under a ruse, R.R. responded that she would go out with Brooks, and gave him a piece of paper and pencil to write down his name, address, and telephone number. Brooks did, and R.R. gave this information to the police that night.

On December 2, 2001, L.H. walked to a store to purchase cigarettes. As she was returning home from the store, she saw Brooks driving a pickup truck. Brooks stopped

his truck next to L.H. and asked if she wanted to smoke a joint together. L.H. responded that she did, and she and Brooks drove to a parking lot. After Brooks parked the truck, he started to rummage around the truck as if he were looking for something. Brooks then suddenly jumped onto L.H. While on top of L.H., Brooks reached into L.H.'s pants and touched her genitals. L.H. struggled to stop Brooks from going further. L.H. eventually struggled free and exited the vehicle. Brooks then drove away, and L.H. ran to a nearby house and called the police.

At the close of state's evidence, Petitioner moved for acquittal of all charges. The trial court granted the motion with respect to two counts related to R.R. The trial court set out each of the remaining four offenses in a separate jury instruction and specifically advised the jury to consider each count separately and to return separate verdicts for each. As stated above, on November 18, 2009, the jury found Petitioner guilty of one count of forcible rape of R.R. and one count of attempted forcible sodomy of L.H. The jury was unable to reach a verdict on the remaining two counts, and the state subsequently dismissed them. The court sentenced Petitioner to 15 years of imprisonment for the forcible rape of R.R. and five years of imprisonment for the attempted forcible sodomy of L.H., to run consecutively.

**Direct Appeal**

Petitioner raised one point on direct appeal. He argued that the trial court erred in denying his motion to sever because the charges related to R.R. were improperly joined with the charges related to L.H., as the offenses giving rise to each set of charges were unconnected, were not part of a common scheme or plan, and were not of the same or

similar nature. Petitioner further argued that he was prejudiced because the jury was likely to consider the evidence of one incident when considering Petitioner's involvement in the other.

The appellate court engaged in a two-step analysis in rejecting this claim. The court first concluded that joinder was proper, and then concluded that the trial court did not abuse its discretion in refusing to sever the charges. The court found that the strength in similarities between the crimes overcame the "minor discrepancies" cited by Petitioner. The court reasoned that the similarities in victims (both were 18 years old), tactics and circumstances of the assaults, and the passage of only one month between the incidents, showed that joinder was proper. The appellate court then found that the trial court did not err in denying the motion to sever, as the number of offenses joined was few and the facts and evidence were distinct and not complex. The court noted that the jury was properly instructed, and the jury's verdict, convicting Petitioner of only two of the four offenses submitted, indicated that the jury was able to distinguish the evidence and apply the relevant law to each offense. The appellate court also concluded that Petitioner failed to make a "substantial showing" of prejudice, as was required to warrant severing properly joined charges.

**State Postconviction Proceedings**

For state postconviction relief, Petitioner asserted that his right to a speedy trial was violated. He also asserted numerous grounds of ineffective assistance of defense and direct appeal counsel. Petitioner pursued only two claims on appeal from the denial of his motion for postconviction relief: (1) that defense counsel was ineffective for failing to

move to dismiss the case based on Petitioner's right to a speedy trial, and (2) that defense counsel was ineffective for failing to move to dismiss the case based on the State's failure to preserve the physical evidence related to R.R.'s rape.

A hearing was held on September 19, 2011, at which the motion court heard the testimony of Joel Eisenstein, Petitioner's defense attorney; David Floyd, the Jefferson County Sheriff's Department evidence custodian; and Tina Forrest, an employee in the Jefferson County prosecutor's office. Eisenstein testified that he did not file a motion to dismiss based on speedy trial issues because the case moved as quickly as possible, based on the necessity of obtaining a psychological examination due to Petitioner's plea. Eisenstein further stated that Petitioner had been uncooperative, which caused the delay in completing his psychological examinations. With respect to the lost or destroyed evidence, Eisenstein testified that the fact that the evidence was lost may well have been beneficial to Petitioner's case because of the possibility of DNA evidence putting Petitioner at the scene of the rape of R.R.

Floyd testified that he had been directed to organize the evidence room. He found Petitioner's evidence in a box in the evidence room, and contacted the prosecutor's office to inquire about it. Floyd recalled speaking to Tina Forrest, who advised him that Petitioner was incarcerated on a homicide charge in Illinois and would not be returning to Missouri, and thus there would be no point in keeping the evidence. Floyd testified that he then destroyed the evidence in December 2004.

Forrest testified that she did not recall receiving a call regarding Petitioner. She further testified that she would not have authorized the destruction of the evidence, and

instead would have referred Floyd's inquiry about the evidence to the prosecutor on the case.

In ruling on Petitioner's claim of ineffective assistance of defense counsel for not moving to dismiss based on Petitioner's right to a speedy trial, the state appellate court used January 24, 2007, the date of "actual restraints imposed by arrest," as the starting point for a speedy trail analysis. The court stated that the time between that date and Petitioner's trial (November 16, 2009) was 22 months, and thus presumptively prejudicial. As will be discussed below, this computation was wrong. The time between Petitioner's incarceration in Missouri and his trial was nearly 34 months.

The appellate court found, however, that the other three factors in a speedy trial analysis—reason for the delay, Petitioner's assertion of the right to a speedy trial, and prejudice to Petitioner—weighed against Petitioner. The court found that the delays in the case were "largely, though not entirely, due to [Petitioner's] motions for continuance, his plea of not guilty by reason of mental disease or defect mere weeks before the initial trial date, and his failure to cooperate with mental health professionals." (Resp. Ex. K. at 6.) Thus, the court concluded that the reasons-for-the-delay factor weighed heavily against Petitioner.

As to the prejudice factor, which the state appellate court stated was the most important factor, the court noted that Petitioner's argument of prejudice rested solely on the State's destruction of evidence in December 2004. However, according to the court, Petitioner failed to present evidence of prejudice between January 2007 and November 2009, the relevant time period for the court's speedy trial analysis, and thus the prejudice

factor weighed heavily against Petitioner. In sum, the court concluded that defense counsel was not ineffective for failing to file a motion to assert Petitioner's right to a speedy trial, as such a motion would have been meritless.

The appellate court next addressed Petitioner's claim that his trial counsel was ineffective for failing to move to dismiss the case based on the State's failure to preserve R.R.'s clothing and rape kit. The appellate court held that the custodian did not act in bad faith because he had no knowledge of a pending criminal investigation against Petitioner. Thus, because the evidence at most "potentially useful," Petitioner's due process rights were not violated, and a motion to dismiss for failure to preserve evidence would also have been meritless.

**Federal Habeas Petition**

As noted above, Petitioner raises the following grounds for federal habeas relief: (1) defense counsel was ineffective for failing to move for a dismissal as a result of the State's violation of Petitioner's right to a speedy trial; (2) defense counsel was ineffective for failing to move for dismissal due to the state's destruction of "materially exculpatory" evidence; and (3) Petitioner's due process rights were violated by the trial court's failure to sever the charges arising out of two different incidents.

**DISCUSSION**

**Standard of Review**

Where a claim has been adjudicated on the merits in state court, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that application for a writ of habeas corpus cannot be granted unless the state court's adjudication:

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

The "contrary to" clause is satisfied if a state court has arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent but arrives at the opposite result. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003); *Strong v. Roper*, 737 F.3d 506, 510 (8th Cir. 2013); *see also Glebe v. Frost*, 135 S. Ct. 429, 430 (2014). A state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Federal courts owe deference to the "ultimate legal conclusion reached" by a state court, "not merely the statement of reasons explaining the state court's decision." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012).

"[A] determination of a factual issue made by a State court shall be presumed to be correct," 28 U.S.C. § 2254(e)(1), and the petitioner has the burden of rebutting this presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Therefore, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (quoting *Yarborough v.*

*Alvarado*, 541 U.S. 652, 664 (2004)). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## Assistance of Defense Counsel

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To show ineffective assistance of counsel, a habeas petitioner must show both that "[his] counsel's performance was deficient" and that "the deficient performance prejudiced [his] defense." *Strickland*, 466 U.S. at 687. "Strickland's first prong sets a high bar. A defense lawyer navigating a criminal proceeding faces any number of choices about how best to make a client's case. The lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (quoting *Strickland*, 466 U.S. at 690).

"Judicial scrutiny of counsel's performance must be highly deferential," and Petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (citations omitted). To show prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A

reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

When an ineffective assistance claim has been addressed by the state court, this Court must bear in mind that "[t]aken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *See Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (citation omitted). In the context of a habeas claim, it is not sufficient for a petitioner to "show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S. 685, 698-99 (2005). "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id*. at 699.

## Defense Counsel's Failure to Move to Dismiss Based on Alleged Speedy Trial Violation

The Sixth Amendment guarantees a criminal defendant the right to a speedy trial. *United States v. Brown*, 325 F.3d 1032, 1034 (8th Cir. 2003) (citation omitted). "A defendant's right to a speedy trial "attaches at the time of arrest or indictment, whichever comes first, and continues until the trial commences." *United States v. Wearing*, 837 F.3d 905, 909 (8th Cir. 2016) (citation omitted). In order to determine whether the right to a speedy trial has been violated, courts balance four factors: (1) length of delay; (2) reasons for the delay; (3) defendant's assertion of the right; and (4) prejudice. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). None of the four factors "is either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial [and] courts must still engage in a difficult and sensitive balancing process." *Id*. at 533. The Supreme

Court has identified three separate ways that post-charge delay may prejudice a defendant: "oppressive pretrial incarceration," "anxiety and concern of the accused," and "the possibility that the [accused's] defense will be impaired" by dimming memories and loss of exculpatory evidence. *Doggett v. United States*, 505 U.S. 647, 654 (1992) (citation omitted). "Of these forms of prejudice, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

As stated above, the first factor is the length of the delay. "[T]o trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has passed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Id.* at 651-52 (quoting *Barker*, 407 U.S. at 530-31). "A delay approaching a year may meet the threshold for presumptively prejudicial delay requiring application of the *Barker* factors." *United States v. Titlbach*, 339 F.3d 692, 699 (8th Cir. 2003). Petitioner notes that his trial began nearly eight years after the original complaint was filed.

Here, the Court finds no error in the state court's use of January 24, 2007, as the date Petitioner's speedy trial right attached. Although the state appellate court erred in the length of the delay from that date until the date trial commenced, this error does not undermine the reasonableness of the court's ultimate conclusion. Indeed, the Eighth Circuit held in *Brown* that a three-year delay, while excessive, did not violate the defendant's speedy trial rights in light of the other relevant factors, including that the defendant's attempt to assert his right was half-hearted, and he did not suffer actual prejudice from the delay. *Brown*, 325 F.3d at 1034-35.

The state appellate court's finding that Petitioner's failure to cooperate with mental health professionals contributed to the delay involved here is supported by the testimony at the September 19, 2011 evidentiary hearing. The state court's finding that Petitioner was not prejudiced by the 34-month delay is also supported by the record. "Because the *Barker* standard is a general, multi-factor standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Taylor v. Roper*, 561 F.3d 859, 863 (8th Cir. 2009) (citation omitted).

In sum, the Missouri Court of Appeals correctly identified the *Barker* factors, and this Court cannot say that the state appellate court analyzed the factors in an unreasonable manner, based on the factual record; nor can the Court say that the state court's speedy trial analysis was an unreasonable application of federal law. As in *Brown*, there is no evidence here that the state negligently delayed its prosecution or intentionally delayed it to gain some impermissible advantage at trial. *See Brown*, 325 F.3d at 1035. And Petitioner had not identified any substantial prejudice from the delay. Thus, Petitioner's claim that defense counsel was constitutionally ineffective for failing to move to dismiss the charges against Petitioner based on a speedy trial violation fails.

**Defense Counsel's Failure to Move to Dismiss Based on the Destruction of Evidence**

A due process violation based on the destruction of evidence is analyzed under two different standards, depending on whether the evidence is "potentially useful," or "materially exculpatory." *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988). The destruction of materially exculpatory evidence is unaffected by the good or bad faith of the officers. However, "the Due Process Clause requires a different result when we deal

with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Id*. In such cases involving potentially useful evidence, a defendant must show that: (1) the government acted in bad faith in failing to preserve the evidence; (2) the exculpatory value of the evidence was apparent before its destruction; and (3) the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other means. *Id*. When the government is negligent, or even grossly negligent, in failing to preserve potentially exculpatory evidence, bad faith is not established. *United States v. Wright*, 260 F.3d 568, 570 (6th Cir. 2001).

Here, the state appellate court reasonably concluded that the rape kit and R.R.'s clothing constituted only potentially useful evidence. *See Youngblood*, 488 U.S. at 56 ("The *possibility* that the semen samples [from attempted rape victim's body and clothing] could have exculpated respondent if preserved or tested is not enough to satisfy the standard of constitutional materiality"); *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (applying the *Youngblood* test for destruction of potentially useful evidence to rape kit evidence, and concluding that the inadvertent destruction by police of the evidence during the course of investigation did not violate the habeas petitioner's due process rights).

The state court further reasonably concluded, based on the testimony at the evidentiary hearing, that the destruction of the evidence in question was not done in bad faith. And the state court correctly applied *Strickland* to conclude that, therefore, defense counsel was not ineffective in failing to move to dismiss the charges (related to R.R.) on

14

the basis of the destruction of the evidence in question. *See Jones v. Lund*, No. 12-CV-2091-LRR, 2014 WL 5361349, at *20 (N.D. Iowa Oct. 21, 2014); *Daughty v. Purkett*, No. 4:04CV00793-ERW, 2007 WL 2609823, at *3 (E.D. Mo. Sept. 5, 2007) ("Petitioner's Due Process claim, based on the destruction of fingerprint evidence and handwritten notes, is unsuccessful, and therefore cannot be the basis of an ineffective assistance of counsel claim."). Petitioner's second claim for habeas relief is denied.

## <u>Denial of Motion to Sever Charges</u>

Petitioner asserts that the trial court's decision to deny his motion to sever the offenses during trial violated his due process rights. "Two offenses may be charged and tried together if they are of the 'same or similar character,' and 'where the offenses are similar in character and occurred over a relatively short period of time and the evidence overlaps, joinder is ordinarily appropriate.'" *United States v. Tyndall*, 263 F.3d 848, 849 (8th Cir. 2001). Moreover, "[t]he presumption against severing properly joined cases is strong," and the mere "possibility that a defendant's chances for acquittal may be better in separate trials is an insufficient justification for severance." *United States v. Thompson*, 690 F.3d 977, 988-89 (8th Cir. 2012) (citation omitted). "To obtain federal habeas relief for a state court's failure to sever different charges for trial, a Petitioner must show that the failure to grant severance rendered the trial 'fundamentally unfair.'" *Whitehorn v. Dormire*, 4:09CV00881 AGF, 2012 WL 4479086, at *10 (E.D. Mo. Sept. 28, 2012) (quoting *Wharton-El v. Nix*, 38 F.3d 372, 374 (8th Cir. 1994)).

Upon review of the record, the Court finds no basis for holding that the state courts' adjudication of this claim was unreasonable factually or legally. As the Missouri

Court of Appeals noted, and the record supports, the incidents involving R.R. and L.H. were sufficiently similar to warrant joinder. Although the offenses arose from two different incidents and included multiple counts of various sex-related crimes, the case was not overly complex so as to confuse the jury. *See id.* at *10-11 (rejecting a petitioner's claim that the state court unreasonably found that the failure to sever for trial two rape charges, of two different women, that occurred approximately three weeks apart, did not violate Petitioner's due process rights); *Cody v. Wallace*, No. 4:09CV00301 ERW, 2012 WL 1025023, at *5 (E.D. Mo. Mar. 26, 2012) (same with respect to denial of motion to sever charges of sex-related crimes involving different victims, multiple counts, and incidents occurring three months apart).

## CONCLUSION

The Court concludes that Petitioner is not entitled to federal habeas relief. The Court does not believe that reasonable jurists might find the Court's assessment of the procedural or substantive issues presented in this case debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. § 2254(d)(2). *See Buck,* 137 S. Ct. at 773 (standard for issuing a Certificate of Appealability) (citing *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003)).

Accordingly,

**IT IS HEREBY ORDERED** that the petition and amended petition of Mark Brooks for a writ of habeas corpus are **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability shall not issue in this case.

**IT IS FURTHER ORDERED** that all other pending motions are **DENIED** as moot.

A separate judgment shall accompany this Memorandum and Order.


_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 27th day of March, 2017.